# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT BRUNING and SHARON BRUNING, a married couple;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF OMAHA, NEBRASKA,<br><br>Defendant. | 8:18CV287<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant City of Omaha, ECF No. 41, and the Motion for Partial Summary Judgment filed by Plaintiffs Robert Bruning and Sharon Bruning, ECF No. 44.

## BACKGROUND

The following facts are those that appear from the record to be undisputed.[1]

In 1979, the Brunings purchased a 4.66-acre parcel of property located in Omaha, Nebraska. The property was zoned for agricultural use when the Brunings purchased it, and it remains zoned for agricultural use. The Brunings used the property to operate a grain farm and a seeding business from 1979 until 2004. During this time period, the Brunings built additional buildings and replaced several others.

---

[1] The City did not properly respond to the Brunings' numbered paragraphs of fact in the Plaintiffs' Brief in Support of Motion for Summary Judgment. "[T]he rules clearly require that [the party opposing summary judgment] respond in kind, and in a specific fashion to the statement of undisputed facts asserted by [the moving party]." *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 799 (8th Cir. 2014) (discussing NECivR 56.1). The Court has attempted to discern what facts are in dispute through the City's facts in support of its motion and in opposition to the Brunings' motion with pinpoint citations to admissible evidence in the record.

In 2004, the Brunings sold their businesses, and the purchaser of the companies continued to use the buildings for seeding and mowing. After the businesses were sold, several additional buildings were built on the property.

The Brunings state that in 2009, City Inspector Timothy Wees "red-tagged" one of the buildings on the property. They then met with Jay Davis, the Superintendent of the Permits and Inspection Division of the Omaha Planning Department, and told him about their use of the property, including that it was leased to third-party businesses. The Brunings state that Davis advised them that their use of the property was permissible and allowed them to continue this use. The City disputes these factual allegations and claims that the Brunings' first interaction with the City regarding their use of the property was in 2015.

After 2012, the Brunings continued to lease building space to other companies. They assert that every time a new building was constructed on the property a representative of the company contacted the City, and every time the representative was told that no permit was necessary.

In 2015, in response to a complaint, the City of Omaha Planning Department began investigating the Brunings' use of the property. After this investigation, the City concluded that the property was being used for activities not permitted in an agricultural district. The City found that the buildings on the property were being leased by several businesses and other users for landscaping and boiler-repair businesses, as well as automobile storage. The Brunings disputed these findings, applied for a variance, and were denied by the City's Zoning Board of Appeals. The Brunings appealed the decision of the Zoning Board of Appeals to the District Court for Douglas County and the Nebraska

Supreme Court, which affirmed the decision of the Zoning Board of Appeals. *Bruning v. City of Omaha Zoning Bd. of Appeals*, 927 N.W.2d 366 (Neb. 2019).

On June 22, 2018, the Brunings brought this case, claiming the City's actions were unconstitutional and should be equitably estopped. Compl., ECF No. 1. The City filed a Motion for Summary Judgment on February 28, 2020, ECF No. 41. That same day, the Brunings filed a Motion for Partial Summary Judgment. ECF No. 44.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact."

*Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

4

**DISCUSSION**

The City seeks summary judgment dismissing this action. The Brunings seek a judgment stating that the City is equitably estopped from claiming that the property's use is non-conforming, that the City committed an unlawful taking, and that the City violated the Brunings' equal protection rights.[2]

**I.      Equal Protection**

The Brunings claim the City deprived them of equal protection and discriminated against them as a class of one. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated her differently from others who are similarly situated and that no rational basis existed for the difference in treatment." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916 (8th Cir. 2001)).

As a threshold inquiry, the Court must determine whether the Brunings are similarly situated to others who allegedly received preferential treatment. *ChemSol, LLC v. City of Sibley*, 386 F. Supp. 3d 1000, 1025 (N.D. Iowa 2019) (citing *Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000)). The degree of similarity must be such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate

---

[2] The Brunings have withdrawn their bill-of-attainder and ex-post-facto claims, and these claims will be dismissed without prejudice.

government policy . . . ." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). Whether a plaintiff is similarly situated to other parties is a question of fact. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799–800 (7th Cir. 2015).

The Brunings list ten properties that they claim are similarly situated. Ex. A, ECF No. 1 at Page ID 16; ECF No. 45-5 at Page ID 532–54. They argue these properties are similarly situated because they are agriculturally zoned but are being used to operate businesses like those operated on the Brunings' property, or they are being leased to third-party businesses that are similar. The Brunings claim they have been treated differently from owners of the comparator properties because they have been told they must vacate their property rather than cease operations. *Compare* ECF No. 54-1 at Page ID 1435 ("[A]ll buildings and business will be served a NOTICE TO VACATE."); *with* ECF Nos. 54-3, 54-4, 54-5, 54-6, 54-7, 54-8 ("You [are] hereby ordered to cease all operations at this address . . . ."). The Brunings also were given five days to comply with the City's directive rather than thirty. The City does not dispute these alleged differences in treatment.

The City has submitted satellite images of the properties that it claims show differences between the comparator properties and the Brunings' property. Ex. 3, ECF No. 43-2 at Page ID 169–95. The City also argues that none of the other properties is being used for more than one commercial purpose, and none is being used for manufacturing or warehousing. Yet the City has not provided evidence in support of these arguments, nor linked the alleged differences in the properties with any rational basis for the disparate treatment.

6

The Court will order the parties to appear for an evidentiary hearing on the City's Motion, to address whether there is any genuine issue of material fact as to the comparator properties' similarity to the Brunings' property for purposes of the City's disparate treatment.

## II.     Equitable Estoppel

"The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to one's detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed." *Lingenfelter v. Lower Elkhorn Nat. Res. Dist.*, 881 N.W.2d 892, 910 (Neb. 2016). However, estoppel "will not lie against the Government as it lies against private litigants." *OPM v. Richmond*, 496 U.S. 414, 419 (1990); *see also Harding Cty. v. Frithiof*, 575 F.3d 767, 777 (8th Cir. 2009) ("[E]stoppel should be used sparingly against public entities.").

In order to succeed on an estoppel claim against a public entity, it is not enough to show the usual elements of equitable estoppel; a plaintiff must also show that the public entity engaged in "affirmative misconduct." *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005) (citing *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002)). If the plaintiff can show affirmative misconduct,

> he must then prove the four traditional elements of estoppel: (1) a "false representation by the government;" (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's "reliance on the misrepresentation to his detriment."

*Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475–76 (8th Cir. 2013) (quoting *Rutten*, 299 F.3d at 995).

7

It is not clear under Eighth Circuit and Supreme Court case law what government conduct might rise to the level of "affirmative misconduct." What is clear, however, is that this is a difficult standard to meet. *OPM v. Richmond*, 496 U.S. 414, 422 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."). The Eighth Circuit has determined that the following examples of government conduct did not rise to the level of affirmative misconduct for purposes of equitable estoppel: a nine-year delay by the government before processing an asylum request, possibly resulting in prejudice to the applicant, *Mejia-Perez v. Gonzales*, 490 F.3d 1011, 1014 (8th Cir. 2007); negligence and possible bad faith of the IRS in giving false information, *Morgan v. Commissioner*, 345 F.3d 563, 567 (8th Cir. 2003); failing to disclose the identity of an allegedly negligent contractor until after the statute of limitations ran, preventing plaintiffs from bringing a case against the contractor, *Rutten*, 299 F.3d at 996; providing arguably misleading or false advice by a Fish and Wildlife Service agent regarding the legality of hunting over a particular field, *United States v. Manning*, 787 F.2d 431, 436–37 (8th Cir. 1986).

The Brunings contend that the City's affirmative misconduct is apparent when viewing its actions as a whole. They claim that they sought a permit for each new building they constructed on their property and, each time, the City informed them they did not need one. Pls.' Br., ECF No. 46 at Page ID 957–58. The Brunings also claim that in 2008 or 2009, the City "red-tagged" one of the buildings on the property for violating zoning ordinances because it was leased to a third-party but did not have a certificate of occupancy. *Id.* at Page ID 958. According to the Brunings, the head of the City's Permits

and Inspections Division, Jay Davis, informed them that no building permit was necessary and withdrew the red tag. *Id.* The Brunings argue that the City's assertion that the Brunings' property is in violation of the zoning ordinance after the prior representations is affirmative misconduct.

Viewing the evidence in the light most favorable to the Brunings, the Court finds that the City's conduct does not rise to the level of affirmative misconduct. The Brunings have not provided any evidence that the City's purported misrepresentations were intentional. At most, the Brunings argue that the City was negligent or acting in bad faith—not enough to satisfy the affirmative misconduct requirement. *See Morgan*, 345 F.3d at 567. Therefore, the City is entitled to summary judgment as to the Brunings' claim of equitable estoppel and this claim will be dismissed with prejudice.

### III. Unlawful Taking

The Brunings allege that the City's enforcement of the zoning ordinance constitutes an unlawful taking under the Fifth Amendment of the United States Constitution and Article 1, section 21 of the Nebraska Constitution.

"The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (quoting U.S. Const. amend. V). The Nebraska Supreme Court has "analyzed the state constitutional issue of whether there has been a regulatory taking or damage for a public use by treating federal constitutional case law and [the] state constitutional case law as coterminous." *Strom v. City of Oakland*, 583 N.W.2d 311, 316 (Neb. 1998) (citing *Whitehead Oil Co. v. City of Lincoln*, 515 N.W.2d 401 (1994)).

The United States Supreme Court has identified four categories of regulatory takings. The first category consists of regulations which "require an owner to suffer a permanent physical invasion of her property." *Iowa Assur. Corp. v. City of Indianola*, 650 F.3d 1094, 1097 (8th Cir. 2011) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). The second category occurs when a regulation "completely deprive[s] an owner of all economically beneficial use of her property." *Iowa Assur. Corp.*, 650 F.3d at 1097 (quoting *Lingle*, 544 U.S. at 538); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992). The third category is when an exaction lacks sufficient justification. *Iowa Assur. Corp.*, 650 F.3d at 1097 (quoting *Lingle*, 544 U.S. at 546–48); *see also Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987). Finally, the fourth category is any "regulation which, after considering its economic impact upon the plaintiff and its essential character, is 'fundamentally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Iowa Assur. Corp.*, 650 F.3d at 1097 (quoting *Lingle*, 544 U.S. at 538–39); *see also Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). The inquiries reflected in each of these cases were directed to identify whether regulatory actions rose to the level of a classic taking. *Lingle*, 544 U.S. at 539.

The Brunings do not argue that they suffered a "permanent physical invasion" as was the case in *Loretto*, 458 U.S. 419. They do not argue that the City implemented a land use exaction in violation of the standards set forth in *Dolan*, 512 U.S. 374, and *Nollan*, 483 U.S. 825. The Brunings also do not state a viable *Lucas* claim as they assert the property still has some value. ECF No. 54-10 at Page ID 1558 (appraising the property's

value with the imposed use restrictions at $172,000). Therefore, the Brunings' claim must be analyzed through the *Penn Central* framework.

The *Penn Central* framework is an "ad hoc, factual inquiry," the factors of which are: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-backed expectations; and (3) the character of the government regulation." *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) (quoting *Outdoor Graphics, Inc. v. City of Burlington*, 103 F.3d 690, 694 (8th Cir. 1996)).

The second factor of the *Penn Central* framework is dispositive in this case. The second factor examines "the extent to which the regulation has interfered with distinct, investment-backed expectations . . . ." *Hawkeye*, 486 F.3d at 441. Investment-backed expectations must be reasonable at the time of the landowner's acquisition of, or capital expenditure on, the property in question. *Outdoor Graphics*, 103 F.3d at 694. "Any later limitation of use by the government which could have been effected prior to the reasonable investment-backed acquisition, cannot give rise to a takings claim." *Id.* (citing *Lucas*, 505 U.S. at 1029–30). Here, the property has been zoned as agricultural since it was purchased by the Brunings. Whether the City properly denied the Brunings a variance from agricultural use is not at issue in this case because "the content or validity of the proceedings before the Zoning Board of Appeals is not an issue before this Court." Pls.' Br., ECF No. 55 at Page ID 1691 (citing *Bruning*, 927 N.W.2d 366). The Brunings are attempting to base their takings claim on a limitation of use by the government which could have been effected prior to the acquisition of their property. *Outdoor Graphics*, 103

11

F.3d at 694 (citing *Lucas*, 505 U.S. at 1029–30). Therefore, the City is entitled to summary judgment and the Brunings' takings claim will be dismissed with prejudice.

## IV. Request for Declaratory Judgment and Injunction

The Brunings' claims for declaratory judgment reiterate arguments already addressed in this order and will not be repeated here.[3] The City also seeks to dismiss the Brunings' request for injunctive relief.

In the Eighth Circuit, courts assess requests for injunctive relief through the *Dataphase* factors. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc). To succeed on a request for injunctive relief, a court must analyze the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114.

The City has not shown as a matter of law that the Brunings could not succeed under the *Dataphase* factors if they succeed on the remaining claim in this case. Therefore, the City is not entitled to summary judgment on the Brunings' request for injunctive relief.

Accordingly,

IT IS ORDERED:

1. The City's Motion for Summary Judgment, ECF No. 41, is granted in part;

---

[3] The Complaint also states that this count seeks to enforce rights under 42 U.S.C. § 1983 and the Due Process Clause. Other than the arguments already discussed, the Complaint does not state what rights the Brunings seek declaratory judgment of under § 1983. Additionally, the Brunings do not state the basis for their due process claims either in their Complaint or in their briefs.

      a. The Brunings' equitable-estoppel claim is dismissed, with prejudice;

      b. The Brunings' takings claim is dismissed, with prejudice;

      c. The Brunings' bill-of-attainder claim is dismissed, without prejudice;

      d. The Brunings' ex-post-facto claim is dismissed, without prejudice; and

2. An evidentiary hearing is scheduled for June 25, 2020 at 10:00 a.m. to address the City's Motion as it relates to the Brunings' equal protection claim.

Dated this 10th day of June, 2020.

                                BY THE COURT:

                                s/Laurie Smith Camp
                                Senior United States District Judge